IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHRISTOPHER J. O'CONNOR,

        Plaintiff,

v.

WELLS FARGO HOME MORTGAGE, INC.,

        Defendant.

CIVIL ACTION NO.
1:08-CV-0281-JEC

## O R D E R  and  O P I N I O N

This case is presently before the Court on defendant's Motion for Summary Judgment [55]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's Motion for Summary Judgment [55] should be **DENIED**.

### BACKGROUND

This case arises under the Homeowner's Protection Act of 1998 ("HPA"), 12 U.S.C. § 4901 *et seq*. (Compl. [1].) The HPA requires lenders to make certain disclosures regarding private mortgage insurance when participating in a residential mortgage transaction. 12 U.S.C. §§ 4901-4905. In particular, and as is relevant to this case, the HPA obligates lenders to disclose whether lender-paid

mortgage insurance ("LPMI") is "required in connection with a residential mortgage" loan. 12 U.S.C. § 4905(c). Plaintiff contends that defendant violated this provision when it refinanced his home mortgage loan in May, 2003. (*Id.* at ¶¶ 37-49.)

Most of the relevant facts underlying this case are undisputed. (*See* Pl.'s Statement of Material Facts ("PSMF") [62] at Section I.) In 1999, plaintiff purchased a home in Smyrna, Georgia for $93,000. (Pl.'s Dep. at 63-68.) Financing was obtained through First Union under its first-time home buyer program. (*Id.* at 79.) Pursuant to the program, no private mortgage insurance was placed on the loan. (*Id.*)

The First Union loan subsequently was assigned to defendant Wells Fargo. (Ochs Decl. [55] at ¶ 3.) Following the assignment, defendant sent plaintiff a letter offering to refinance the mortgage. (*Id.* at ¶ 6.) The letter presented two options for refinancing: (1) a 30-year mortgage with a fixed interest rate of 6.750% or (2) a 15-year mortgage with a fixed interest rate of 5.875%. (*Id.*) Plaintiff selected the second option. (*Id.* at ¶ 7.) He closed on the refinancing loan on May 1, 2003. (*Id.* at ¶ 13.) The closing is memorialized in several loan documents provided by defendant. (Ochs Decl. [55] at Exs. C, D, and E.)

Defendant did not provide plaintiff with any disclosures regarding mortgage insurance prior to closing. (*Id.* at ¶ 15.)

2

However, in connection with the refinancing offer, defendant had determined that the loan to value ("LTV") ratio on plaintiff's loan would be 95%.[1] (PSMF [62] at ¶ 5.) It was defendant's standard business practice to place mortgage insurance on loans with an LTV greater than 80%. (*Id.* at ¶ 3.) Pursuant to that practice, defendant obtained mortgage insurance for plaintiff's loan approximately five days after closing. (Ochs Decl. [55] at ¶¶ 18, 19.) The cost of the insurance was included in the interest rate offered to refinance plaintiff's loan.[2] (PSMF [62] at ¶ 7.)

In September, 2006, defendant sent plaintiff a letter that stated as follows:

> Wells Fargo would like to congratulate you on reaching a significant milestone. With each mortgage payment you have made, you have increased the equity in your home. As a result, your Loan to Value (LTV) is now less than 78%.
>
> At the time you took out your mortgage, you chose Lender Paid Mortgage Insurance (LPMI). LPMI is different than other kinds of insurance as it is incorporated into the interest rate. Because the LPMI payment was incorporated into the interest rate, it is not possible to remove the insurance from your mortgage payment.

(Ochs Decl. [55] at Ex. I.) The letter invited plaintiff to contact defendant to learn about refinancing options that would end the LPMI

---

[1] LTV is the ratio of the loan amount to the value of the home. (Pl.'s Resp. [63] at 2, n.1.) For example, an LTV of 80% means that the mortgage is for 80% of the home's value. (*Id.*)

[2] The mortgage insurance increased plaintiff's interest rate by half a point, or .5%. (PSMF [62] at ¶ 7.)

3

and the effect it was having on his interest rate. (*Id.*)

Upon his receipt of the above letter, plaintiff made a "qualified written request" under the Real Estate Settlement Procedures Act ("RESPA") for either: (1) verification that LPMI had been disclosed to him or (2) a retroactive refund and reduction in the interest rate on his loan. (Pl.'s Resp. [63] at 4-5.) When defendant refused to honor his request, plaintiff filed this action asserting claims under the HPA and RESPA. (Compl. [1] at ¶¶ 37-56.) Plaintiff voluntarily dismissed his RESPA claim on May 22, 2009. (Order [48].) Defendant subsequently filed a motion for summary judgment on plaintiff's HPA claim, which is presently before the Court. (Def.'s Mot. for Summ. J. [55].)

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate when the "pleadings,. . .[the discovery and disclosure materials on file, and any affidavits,] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249-50.

4

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be "'no genuine issue as to any material fact,'" as a "complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 322-23 (quoting FED. R. CIV. P. 56(c)).

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323. However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of*

5

*Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (1986).

## II. Plaintiff's HPA Claim

The relevant provision of the HPA defines LPMI to mean "private mortgage insurance that is required in connection with a residential mortgage, payments for which are made by a person other than the borrower." 12 U.S.C. § 4905(a)(2). When LPMI is "required" in connection with a residential mortgage, the HPA obligates the lender to provide a written disclosure "not later than the date on which a loan commitment is made for the . . . mortgage transaction." 12 U.S.C. § 4905(c)(1). The purpose of the disclosure is to inform the borrower that LPMI "usually results in a residential mortgage having a higher interest rate" and that it "terminates only when the residential mortgage is refinanced . . . paid off, or otherwise terminated." 12 U.S.C. § 4905(c)(1)(B)(i) and (ii).

Defendant construes the above language to mandate disclosure only when mortgage insurance has been secured prior to closing. (Def.'s Br. [55].) According to defendant, mortgage insurance that is obtained after closing cannot be deemed to have been "required" in connection with the mortgage, and therefore does not meet the

6

statutory definition of LPMI. (*Id.* at 12-15.) The parties agree that defendant did not place mortgage insurance on plaintiff's refinancing loan until approximately five days after closing. (*Id.* and Pl.'s Resp. [63] at 14.) Thus, under defendant's reading of the statute, the insurance did not trigger the disclosure requirements of the HPA. (Defs.' Br. [55] at 12-15.)

Defendant does not cite, and the Court has not found, any case law to support defendant's interpretation. Contrary to defendant's suggestion, the plain language of the HPA does not impose any time limits on the disclosure requirements associated with LPMI. *See Warshauer v. Solis*, 577 F.3d 1330, 1335 (11th Cir. 2009)(when the language of a statute is "plain and unambiguous" as to the issue in dispute, there is no need for further inquiry). The statute provides that disclosure is necessary whenever private mortgage insurance is "required in connection with a residential mortgage transaction." 12 U.S.C. § 4905(c). That language does not explicitly or implicitly limit the application of the disclosure requirements to cases where the lender has secured mortgage insurance prior to closing.

Moreover, there is an abundance of evidence in the record to suggest that defendant in fact "required" the mortgage insurance that was placed on plaintiff's refinancing loan approximately five days after closing. Prior to closing, defendant determined that the LTV on plaintiff's loan would be 95%. (PSMF [62] at ¶ 5.) Defendant's

7

general business practice was to require mortgage insurance on all loans with an LTV of greater than 80%. (*Id.* at ¶ 3.) Defendant's investors also required mortgage insurance on loans with an LTV greater than 80%. (*Id.* at ¶ 2.) Knowing that insurance would be necessary, defendant added half a point (.5%) to the interest rate on plaintiff's loan. (*Id.* at ¶ 7.)

Indeed, defendant apparently believed that it had applied LPMI to plaintiff's loan, and was thus subject to the disclosure requirements of the HPA, when it sent plaintiff the September, 2006 letter. (Ochs Decl. [55] at Ex. I.) The letter indicates that plaintiff "chose [LPMI]" when he completed the refinancing, and that "the LPMI payment was incorporated into the interest rate" on plaintiff's loan. (*Id.*) Further, the letter appears to be an attempt to comply with a second disclosure requirement of the HPA that is triggered when the LTV ratio indicates that mortgage insurance is no longer necessary. 12 U.S.C. § 4905(c)(2)(requiring a written notice advising the mortgagor of financing options that could eliminate the need for private mortgage insurance in connection with the residential mortgage transaction).

Based on the plain language of the HPA, the Court rejects defendant's argument that after-acquired mortgage insurance can never qualify as LPMI. Although defendant did not place mortgage insurance on plaintiff's refinancing loan until approximately five days after

8

closing, the evidence suggests that the insurance was "required" by defendant's standard business practices and by its investors. Accordingly, defendant's motion for summary judgment should be **DENIED**.

### CONCLUSION

For the foregoing reasons, the Court **DENIES** defendant's Motion for Summary Judgment [55].

SO ORDERED, this 24 day of January, 2011.

_____
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE